## POWER OF MUNICIPAL AUTHORITIES TO NARROW SIDEWALK.

[Franklin County Common Pleas Court.]

ANDERSON V. THE CITY OF COLUMBUS.

Decided, December 4, 1903.

*Sidewalk—Power of Municipal Authorities to Determine Width of, or to Change Width of—Expense of Paving Strip Taken Off Sidewalk Not Chargeable to Abutting Owner—Notice of Intention to Narrow Sidewalk—Change in Location of Street Car Track.*

1. Where land is dedicated to public use as a street, every part of it becomes subject to the control of the proper municipal authorities, and the division to be made between the part to be used by vehicles and the part to be used as a sidewalk for pedestrians is within the discretion of such authorities, and unless unreasonably exercised can not be controlled by judicial decision.
2. This discretion is continuing, and where a necessity for making a change in the width of a sidewalk arises, the determination so to do is, in the absence of fraud or oppression, final in the municipal authorities.
3. The narrowing of a sidewalk does not affect an abutting property owner's ingress or egress, and if inconvenience results to him from such change, it is an inconvenience which affects equally the public at large.
4. Failure to serve the abutter with notice of intention to narrow the sidewalk in front of his property does not entitle him to an injunction against the carrying out of the work.
5. The expense of paving the strip added to the street by the narrowing of the sidewalk can not be charged against the abutting owner,

but must be paid for out of the general street improvement fund.

6. An abutting owner who consents to a change in the location of a street car track in front of his property and makes no objection while the work is going on, can not thereafter complain of the maintenance of the track at that point.

BIGGER, J.

This case is submitted to the court for decision upon the evidence. The plaintiff in his petition states that he is the owner of a lot at the southwest corner of Gay and Third streets in this city, fronting 42 feet on Gay street and being 75½ feet deep on Third; that the pavements are about 15 feet wide upon each street; that the lot has been improved with a brick building occupying the entire frontage on Gay street and extending back on Third street for a distance of 55 to 60 feet; and that the two store rooms upon the ground floor as well as the upper rooms in the building are occupied by tenants; that the premises are located in the center of the business district of the city and in a populace section thereof, and are very valuable; that both Gay and Third streets have been paved with an expensive pavement; that the curb lines have been established and expensive and permanent pavements constructed on both streets between the building and the curbs, the entire expense of which was assessed upon plaintiff's premises and paid for by him; that he has leased the premises to tenants with all the privileges and appurtenances belonging thereto, and that they are using the pavements in front of their premises for temporarily storing freight and goods which are carried into and from their place of business. He then states that the city council of Columbus has passed an ordinance to provide for a change in the curb line at certain street corners and among others for a change in the curb line on the southwest corner of Gay and Third streets, beginning at a point on the west curb line of Third street and from thence by a curve with a radius of about 18 feet to a point in the south curb line of Gay street. That the ordinance was passed in accordance with the statue in such cases made and provided, but that the same is illegal and void. That it is intended by the city in pursuance of this ordinance to cut off the established pavement 48 square feet as the same is now constructed and used, and throw that amount of the sidewalk into the street, and thus place upon

the premises of plaintiff the necessity of paving the 48 said square feet of street. It is then averred that no notice was served upon the plaintiff of the intention of the city to make the change in the curbing and pavement; that the city has not tendered or offered the plaintiff any compensation for the property of the plaintiff so about to be taken, and that plaintiff has never given his consent to the change proposed. It is further averred that the city has no right or authority to change the curb line and thus make a change in the pavement without first taking the necessary steps to appropriate the plaintiff's property thus about to be taken for public use. That the defendant threatens to and will, unless restrained, proceed to tear up the pavement and curbing and cut off the corner, and that such acts on the part of the city will materially affect and destroy the value of the plaintiff's premises and cause an irreparable injury to the same. It is further averred that there is no necessity for such change; that the streets are wide and that there is 14 feet of space between the curb and the curve which now connects the street car tracks upon Third street with those upon Gay, and that the same is ample for the accommodation of travel upon the street. Plaintiff prays that the defendant may be temporarily restrained, and that upon final hearing the defendant may be permanently enjoined.

The answer of the defendant admits that the plaintiff is the owner of the premises in question, and that there is a brick building erected thereon, and that said premises are occupied by tenants of the plaintiff. It is further admitted that the premises are situated in the center of the business district of the city and in a populace section thereof; that Gay street and Third street in front of plaintiff's premises have been paved, and the grade thereof established, and the curb lines also established. The defendant further admits the passage of the ordinance providing for a change in the curb line at the southwest corner of Gay and Third streets, and that in pursuance thereof the defendant intends and proposes to make a change at the southwest corner of Gay and Third streets, beginning on the west curb line of Third street and to a point on the south line of Gay street with a radius of 18 feet. It is further admitted that no notice of the intention of the city to make the

change was served on the plaintiff. All the other averments of the petition are denied.

The evidence shows that the plaintiff's premises located at the southwest corner of Gay and Third streets are upon what is known as the interurban loop, constructed for the use of the interurban railways entering the city, and that this loop passes by a curve around the southwest corner of Gay and Third streets; that prior to the construction of this loop the plaintiff had given his consent to its constuction, and it appears thereafter it was constructed and plaintiff did not object to its construction in the manner in which it was constructed, or at least he took no steps to prevent it.

The evidence further discloses that the distance between the corner of the sidewalk and the track is about 10 feet and that when a car is passing around the curve, or at least when some of the longer cars are passing around the curve, there is not sufficient space between the side of the car and the corner for an ordinary vehicle; that in order to make the distance sufficient for the passage of vehicles it is proposed to take off a portion of the corner of the sidewalk and throw sufficient of it into the street to make the space sufficient for the safe passage of vehicles.

Upon this state of facts the plaintiff claims that the city is about to take his property without making compensation therefor. The contention of the city is that it is not the taking of the plaintiff's property but it is only the exercise of a power conferred upon the city by law in the discharge of the legal duty imposed upon it, to make the streets of the city safe for public travel.

The statute of the state upon the subject of control of municipal authorities over its streets is contained in Section 1536, subdivision 131, of Bates 4th Edition of the Revised Statutes. It is provided that—

"In all municipal corporations council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, acqueducts, and viaducts within the corporation, and shall cause the same to be kept open and in repair and free from nuisances."

Section 1536, 232, provides that—

"The councils of cities and villages may provide by ordinance for the construction and repair of all necessary sidewalks, or parts

thereof, within the limits of the corporation and may require by the imposition of suitable penalties or otherwise, the owners and occupants of abutting lots and lands to keep the sidewalks in repair, free from snow or any nuisance."

Substantially the same general powers control over the streets and sidewalks of municipalities that have always been conferred upon the municipal authorities by law in this state.

The term street in legal signification includes all parts of the highway, the roadway, the curb and gutters and the sidewalks. Elliott on Roads and Streets, Section 20.

The statutes of the state nowhere fix the width of streets nor the relative width of the roadway and the sidewalk. This is left entirely to the discretion of the municipal authorities. Where land is dedicated to public use as a street every part of it becomes subject to the control of the proper municipal authorities and the division to be made between the roadway or part of the highway to be used by vehicles and that to be used as a sidewalk for pedestrians is within the discretion of the municipal authorities and can not, unless unreasonably exercised be controlled by judicial decisions. As to the rights of municipal authorities to determine when and how streets shall be improved, Elliott on Streets and Roads says, at Section 506, that the "right of the judiciary to interfere can only exist where there has been fraud or oppression or some such wrong constituting a plain abuse of discretion."

The same doctrine is announced in the case of *Railroad Company* v. *Defiance,* 52 Ohio State, 262, where it was decided as to the discretionary power of city councils over the subject of street improvements, that "their decision when not transcending their powers nor induced by fraud is not subject to judicial revision."

Elliott says at Section 477, that—

"The question whether a road or street shall be improved or repaired is generally committed to the local authorities for decision, and, under the principle to which we have so often referred, their decision can not, as a rule, be controlled by the courts."

Again the same author says at Section 484 that—

"It is the right of those to whom the authority is delegated to determine not only when, but in what manner the improvement

shall be made, except, of course, where the statute specifically designates the improvements and prescribes the mode of making them, and no citizen can compel the highway officers to undertake the work or to pursue a particular course."

The same author in speaking of the power of municipal authorities to determine the width of sidewalks, says at Section 621 that—

"It is undoubtedly true that cities have a wide discretion in determining how much of a highway shall be devoted to the use of horses and vehicles, and how much shall be given to the sidewalk, trees, gutters and the like."

The statute of this state not prescribing the width of sidewalks, there is no question but that it was within the discretion of the municipal authorities to determine the width of the sidewalk upon these streets in the first instance, and it appears that by ordinance that this was done, and the evidence shows that the sidewalks were fixed at 18 feet in width, and that the pavements are in fact 18 feet wide. If the city authorities had seen fit, therefore, in the first instance to make the corner of this pavement round instead of square, or to have made the sidewalk pavement 12 or 15 feet wide, instead of 18, I think clearly the owner of the abutting property could not have complained. But the authority to improve a highway is a continuing authority and is not exhausted by its exercise in a single instance (Elliott, Section 506). The same doctrine is announced in the case of *The Railroad Company* v. *Defiance, supra.* The court says:

"The powers conferred on municipal corporations with respect to the opening, repair and improvement of their streets and public ways are held in trust for public purposes and are continuing in their nature, to be exercised from time to time as the public interests require."

When land is dedicated to street uses the municipal authorities are invested by law with a public trust and charged with the administration of that trust. From the very nature of things the improvement of a public street which is sufficient to-day, may not be sufficient 25 or 50 years from this time. As the needs of the traveling public are subject to change with increased population and changes in the number and style of vehicles used upon the

streets, there may come a necessity for a change in the manner of the surface improvement of the street to fit it for the use for which it was dedicated, and when this necessity arises the authority exists in the municipal corporation, being a continuing authority to make such improvements as the public necessities demand. And this discretion is one, too, which will not ordinarily be controlled as we have seen, by the courts, and the determination of the municiṛal authorities that the necessity exists, is, in the absence of fraud or oppression, final.

The use of the streets by street railways has always been held in this state to be a proper use of the streets, and within the term of the original grants for use of the public as a highway and that such use does not impose an additional burden upon the easement unless the railway be so constructed as to interfere with the owners' easement of access to his property. It is held to be a vehicular use of the streets which must have been fairly within the contemplation of the dedicator. The construction of such railways makes it necessary to construct curves in turning from one street into another, and in constructing such curves it may bring the cars into such close proximity to the projecting corners or sidewalks as to leave an insufficient space for the passage of a vehicle and that is what the evidence shows to be the case at this corner. Nor does it appear that the curve is put in in a manner different from that ordinarily used in constructing such curves. It is true that the radius of the curve is somewhat different from that used upon the opposite corner, but it does not appear that if the radius was changed here that it would make any practical difference in the situation.

As I have said the evidence shows and the plaintiff himself admits that he gave his consent to the construction of this curve. He has stood by and seen it constructed and made no objection. Under such circumstances, I am of opinion that as between the plaintiff and the railway company it is now too late for him to object to the maintenance of the track at that point, upon the principle that one who gives his consent to such an erection and sees it constructed, can not, after money has been expended on the faith of his acquiescence, be heard to object.

But there is another party who is interested and that is the city of Columbus, which is charged by law with the duty of keeping the streets safe for the traveling public and which is made liable by law for injuries resulting from its failure to do so. Under such circumstances in my opinion the plaintiff can not prevent the city from taking such reasonable steps not amounting to fraud or wantonness as in the discretion of the municipal authorities may be necessary to obviate the danger. It is claimed by the plaintiff that the change in the curb line is not necessary. But the city contends that the situation presented at that point is dangerous. I think the determination of the necessity for the change by the city council is not subject to judicial control. This was the decision of the Supreme Court in the case of *Railroad Company* v. *Defiance, supra.* In that case the municipal authorities, by ordinance, undertook to remove bridges on its streets, crossing the tracks of the Wabash railroad and provided for the crossings at grade. This was resisted by the railroad company which claimed, as in this case, that there was no necessity for this change, and that it greatly increased the danger to the traveling public both upon the streets and the railroad. But the court held that—

"The comparative dangers in the use of grade and overhead crossings and the relative public benefits and the private disadvantages that may result from the contemplated improvement of the streets are matters for the consideration of the members of the council who are the sole judges of the propriety as well as the necessity of the improvement, and their decision, when not transcending their powers, is not subject to judicial revision."

Counsel for the plaintiff claims that the question here presented is in principle not different from that of the change of a grade in a street. But this is not a change of grade. The grade will remain the same after the change in the curb line. The access of the plaintiff to his premises it not at all interfered with as it is interfered with where there is a change of grade. Furthermore, no covery can he had where the city authorities make a reasonable change in the grade of a street unless the abutting owner has constructed his improvements to conform to a grade already established by the municipal authorities, and the right to recover rests upon the principle that the city having established the grade, an abut-

ting owner has the right to consider that as final and to construct his building with reference to that grade as to ingress and egress. And that, if afterwards the grade is changed so as to interfere with his easement of access, that he may recover from the city the damages caused by the change in the grade. The only change proposed here is to make a different apportionment between the amount of space in the roadway and upon the sidewalk. The plaintiff's easement of access to his building is not interfered with nor, as he himself testifies, was it constructed in any manner with reference to the width of the sidewalk, and it does not appear that it would have been constructed in any manner different if the side-walk had been originally 12 or 15 feet wide instead of 18. The change proposed, furthermore, does not seem to me to be unrea-sonable. The distance from the plaintiff's building to the curb line will be at all points 18 feet, the width established by the city ordinance for this sidewalk. What is proposed, as I understand it, is this: Taking the corner of plaintiff's building as the center of a circle, and with a radius of 18 feet to describe the arc of a circle from the south curb of Gay street to the west curb of Third street, thus cutting off the projecting corner of the sidewalk and giving sufficient space between the cars and the corner of the pavement for the safe passage of vehicles. If any inconvenience results to plaintiff by reason of this, it is, in my opinion, an inconvenience which affects equally the public at large who use the street, and the right to make such reasonable changes in the improvement of a street not affecting the abutting owners' easement of access as in the discretion of the city council are necessary to make the street safe for public travel, is covered by the grant to public uses. I do not hold that the exercise of this discretionary power is wholly beyond judicial control. Elliott says upon this subject at Section 506 that "where there is a palpable abuse of discretion, then judicial aid may be successfully invoked, but so long as there is no abuse of discretion the courts can not rightfully interfere, even though it may appear that the local authorities have erred in judgment." Where this discretion is reasonably and honestly exercised —and there is no proof here to the contrary—the discretion can not be controlled.

As to the objection that the cost of the improvement will be assessed upon the plaintiff, the city disavows any intention of assessing any portion of the cost on the plaintiff. Indeed I am of the opinion that the city would not have authority to do so after the plaintiff has constructed the pavement at his own expense. I think he can not be required so long as it is in good condition, to take it up and reconstruct it. The statute provides that where a pavement has been constructed in accordance with an established grade and the cost assessed upon the abutting property owner, that the abutting owner shall not be subject to another assessment for the same purpose made necessary by a change in the grade of the street. So I think where a re-pavement is made necessary not by constructed along the various roads, streets, alleys and public ways a change in the grade, but by a change in the width of the roadway and pavement, the abutting property owner can not be required to pay for the change.

As to the claim that the city can not pay for it in any other way, I am of opinion the city being charged by law with the duty of keeping the streets safe for the traveling public, and being empowered to make improvements, that the grant of powers carries with it undoubtedly the incidental powers necessary to the proper exercise of the powers granted. The statute makes no specific provision for such a case as this, but I can not doubt that the general grant of power carries with it as necessarily incidental, the right and power to pay from the general funds for such a change if, in the judgment of the city council, the improvement is necessary to make the street safe for the traveling public.

The question presented by this case does not seem to have been decided in this state. Nor, indeed, have I found the exact question as it is raised here decided in any reported case. The same question in principle it would seem was decided by the Indiana Supreme Court in the case of *The Town of Marion* v. *Skillman,* 127 Indiana, 130.

In that case the defendant in error had constructed a hotel upon a street of the town of Marion. Afterwards the town had ordered a sidewalk 8 feet in width to be constructed along the street upon which the hotel fronted. The hotel, it appeared, had been built so as to encroach upon the street, but was built before the grant

of the street to public use, and therefore was not an unlawful obstruction in the street, and the sidewalk was constructed of the same width by the hotel as at other points upon the street, which necessarily caused it to project into the roadway. After the improvement had been made by the abutting owners it was accepted by the town as constructed with this projection of the sidewalk into the street in front of the hotel. Thereafter the town authorities undertook to cut off this projection of the sidewalk into the street, which was attempted to be enjoined by the defendant in error. The court decided that "a city or town is not compelled to pave a sidewalk to the full width that it has been formerly paved from that fact alone, but it may narrow such improvement when it repaves it. Town trustees have the power to determine what the width of a sidewalk shall be and they are not required to make it of uniform width throughout the entire length of the street nor to make the improvement of such sidewalk for the entire length of a uniform width."

The court further decided that "before the courts will, at the suit of an abutting landowner, enjoin the municipal authorities in making street improvements at public expense, at least it must be shown that there has been a clear invasion of the rights of such complaining landowner. Before an injunction will be granted, in such an instance, it must be shown that unless granted the abutting lot owner would suffer an irreparable injury."

A city or town can not compel abutting landowners to pay for street improvements unless empowered so to do by statute, and when so empowered the statute will be strictly construed.

The power to make street improvements to be paid for out of the city or town treasury is liberally construed, and it is the exercise of a corporate function that it implied from the general words of the act of incorporation.

It appeared in that case that the sidewalk at one end of the hotel was narrowed from 8 feet to 5½ feet. The court in the opinion says "the land in question formed a part of Branson street, and the board of trustees had the same power to determine the width of the sidewalk at that point that they had to determine the width of any other sidewalk on any other street, and in the absence of any finding showing such abuse of the discretion with

which the law has clothed them as would work great and irreparable injury to the appellees, they should not have been enjoined. If the effect of the work would be to cut off or destroy appellee's right of ingress or egress, they would doubtless be entitled to enjoin the board from doing it, but no such case is presented."

The fact that no notice was served upon the plaintiff will not, I think, give a right to enjoin the city. That is provided for where it is sought to assess the cost of the improvement on the abutting owners. But this is not a case where any assessment is sought to be levied on the abutting owner.

For the reasons stated, I am of opinion that the plaintiff is not entitled to an injunction to prevent the city from making this improvement. I have gone at length into the question because there seems to be no decisions in this state on the subject.

*T. E. Powell,* for plaintiff.

*Butler, Junk & Marshall,* for the city.